Stephen W. Silverman, Springfield, Mass., for plaintiff.

Frank H. Santoro, Asst. U. S. Atty., Richard Blumenthal, U. S. Atty. for the District of Connecticut, New Haven, Conn., for defendant.

### RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

This is an action for judicial review of a final administrative determination of the United States Civil Service Commission ("CSC"), affirming the decision of the Federal Aviation Administration ("FAA") to remove the plaintiff from his position as an air traffic controller. Because the court finds that the FAA's decision to discharge McDowell as a consequence of his possession of marijuana (for which he was convicted in a Massachusetts court), coupled with three occasions on which he was absent from his assigned post without leave, was neither arbitrary nor capricious, the administrative decision must stand. Moreover, the court finds no merit in the plaintiff's suggestions that the administrative record was tainted by the receipt of impermissible hearsay evidence or evidentiary rulings which prevented the plaintiff from offering testimony as to his professional competence, which was not even questioned by the FAA. Accordingly, the plaintiff's motion for summary judgment is denied, the defendant's cross–motion for summary judgment is granted, and the complaint is dismissed.

### Background

Until his removal from service on June 14, 1974, plaintiff William D. McDowell was employed as an air traffic control specialist in the FAA's control tower at Groton, Connecticut. In that capacity, he was responsible for guiding air traffic in the vicinity of the Groton Airport. Nothing in the record below indicates that McDowell's job performance was unsatisfactory; his professional competence has not been questioned. However, in 1973, he was absent without leave three times (for which he was disciplined on two separate occasions), and on March 22, 1974, he was convicted in the Superior Court for Hampden County, Massachusetts, of possession of marijuana, in violation of Mass.Gen.L. ch. 94C, § 34.[1]

---

1. McDowell was first convicted in the Springfield District Court of possession of marijuana and amphetamines on September 23, 1973. Pursuant to Mass.Gen.L. ch. 278, § 18, he ap- pealed his conviction to the Superior Court for Hampden County, where he was tried *de novo* before a jury. In the Superior Court, he was convicted of possession of marijuana, but ac-

Because McDowell was a first offender, he received a sentence of six months' probation, pursuant to Mass.Gen.L. ch. 94C, § 34. That statute provides, in pertinent part:

> Notwithstanding any other penalty provision of this section, any person who is convicted for the first time under this section for the possession of marihuana . . . and who has not previously been convicted of any offense pursuant to the provisions of this chapter, or any provision of prior law relating to narcotic drugs or harmful drugs as defined in said prior law shall be placed on probation unless such person does not consent thereto, or unless the court files a written memorandum stating the reasons for not doing so. Upon successful completion of said probation, the case shall be dismissed and records shall be sealed.

After McDowell successfully completed the six months of probation to which he had been sentenced, his criminal record was sealed as of September 22, 1974.

As a consequence of McDowell's conviction, his superiors in the FAA commenced proceedings to remove him from his position as an air traffic controller. In a letter dated April 10, 1974, Richard E. Livingston, Jr., Chief of the Air Traffic Division of the FAA for the New England Region, notified McDowell of the agency's intention to discharge him.[2] The letter specified McDowell's March 22, 1974 conviction as the basis for the FAA's decision, and also stated that

"[i]n arriving at this proposed action of removal, consideration was given to the fact that on October 9, 1973, you were given an official letter of reprimand for absence without leave (AWOL), and on December 7, 1973, you were suspended for 30 days for two separate occasions of absence without leave (AWOL)." After receiving a written reply from the plaintiff, Livingston issued a formal notice of decision on June 5, 1974; this notice announced that McDowell would be discharged effective June 14, 1974.

Since his dismissal by the FAA, McDowell—who has been represented by capable counsel throughout—has sought to reverse the agency's decision in every forum open to him. The first step taken by the plaintiff was an appeal within the FAA. On September 4, 1974, a hearing on that appeal was held in Groton before FAA Hearing Officer Oscar W. Holmes. At that hearing, Livingston testified that the decision to terminate McDowell's employment was based on "the recent conviction [for] possession of marijuana coupled with the past record of misconduct"; the latter reference, Livingston explained, was to the occasions on which McDowell was absent without leave from his post.[3] Livingston explained the reasoning which led to his decision in the following terms:[4]

> I can think of probably no other single discipline outside of the air traffic field that relies on public trust almost to the point of blind faith on the part of the

quitted on the amphetamine charge. Massachusetts' unusual two-tiered system of criminal justice—which provides for a District Court nonjury trial followed, upon conviction, by a jury trial *de novo* on appeal—is described in *Ludwig v. Massachusetts*, 427 U.S. 618, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976), in which the Supreme Court held that this procedure neither violates defendants' rights to a jury trial nor unconstitutionally exposes defendants to double jeopardy.

The disciplinary actions taken by the FAA as a consequence of McDowell's AWOL violations are described in the Notice of Proposed Removal, dated April 10, 1974. *See* Memorandum from FAA Hearing Officer Oscar W. Holmes to Director, New England Region (Docket No. 74–6), November 13, 1974, p. 1. (This document was submitted in connection with the pending motions and is part of the court's file). *See*

*also* Decision of CSC Regional Chief Appeals Officer, June 4, 1975, p. 2; p. 608, *infra.*

2. McDowell's removal was first proposed in a February 22, 1974 letter signed by Livingston. The dismissal proposed in that letter was prompted by McDowell's conviction in the Springfield District Court. *See* n.1, *supra.* This letter was rescinded after McDowell appealed his conviction to the Superior Court, and was in effect superceded by the April 10, 1974 letter, written after McDowell's conviction in the Superior Court.

3. Transcript of Hearing Before FAA Hearing Officer, Sept. 4, 1974 (hereafter "FAA Tr."), p. 14.

4. *Id.* at 15–16 (emphasis added).

user of the system. Anything that should occur that would erode this public trust and confidence in the system, in my judgment, is an unacceptable situation and one that would tend to deteriorate the services that we provide and our reason for existence.

Now, I feel that . . . a conviction for possession of mar[i]juana coupled with what I have to describe [as] a lack of responsible conduct as reflected in three specific disciplinary actions, would in fact constitute [sic] *an erosion of [the] public trust and confidence that is at the heart of the air traffic system.*

. . . . .

Whatever knowledge is common knowledge regarding Mr. McDowell's record with the Agency, I can't really say where the knowledge would come from or how it flowed, but I do know [that] the informal organization, commonly referred to as a grapevine, has in fact ensured that this is pretty much common knowledge among the work–force, and *I am deeply concerned that teamwork and the trust and the cohesiveness . . . which must exist in an air traffic facility is in fact being endangered in this instance.*

At this hearing, Livingston explained that by "grapevine" he meant the knowledge of McDowell's conviction within "the general flying community around the Groton Airport." [5]

After considering the testimony of Livingston and of two witnesses produced by McDowell, Hearing Officer Holmes submitted a report, dated November 13, 1974, in which he recommended that Livingston's decision to remove the plaintiff from his position be sustained. This recommendation was accepted by Ferris J. Howland, Director of the New England Region of the FAA, in a November 20, 1974 letter denying McDowell's appeal.

Having exhausted his remedies within the FAA, McDowell turned to the appellate procedure afforded by the CSC, and was given a second hearing, before Harry Grossman, Chief Appeals Officer of the CSC Boston Field Office. At this hearing (which was held in Springfield on February 14, 1975), as at the hearing before the FAA hearing officer, Livingston testified as to the reason for his decision to discharge McDowell: [6]

As I testified previously, . . . my primary concern was the erosion of the trust and public confidence in the air traffic system in New England. Three specific instances: two charges of AWOL which resulted in a letter of reprimand and a 30–day suspension, both of which are evidenced by letters that are a part of the record; and finally the misconduct[,] the action of criminal misconduct that took place as evidenced by the conviction in the state of Massachusetts. These three incidents comprising the track record of Mr. McDowell is what influenced my decision.

Livingston conceded that he knew of no direct effect of the conviction on McDowell's job performance, but emphasized that the criminal conduct of the plaintiff "did affect the Groton Tower as part of the overall system in that the trust and confidence and the faith provided in that facility was being questioned." [7] Specifically, Livingston testified that the chief of the Groton air traffic control tower, William L. Herron, had told him that (in Livingston's words) [8]

the misconduct engaged in by Mr. McDowell was generally common knowledge throughout the aviation community in and around Groton, was a subject of discussion from time to time and very common knowledge among his peer Controllers in the tower.

**5.** *Id.* at 43.

**6.** Transcript of Hearing Before Regional CSC Chief Appeals Officer, Feb. 14, 1975 (hereafter "CSC Tr."), p. 18.

**7.** *Id.* at 25.

**8.** *Id.* at 28. Livingston testified that McDowell was taken out of the control tower and given administrative duties after his conviction in the Springfield District Court (see n.1, *supra*) and that the plaintiff performed no air traffic control duties thereafter.

At the CSC hearing, Herron testified that pilots who used the Groton Airport (and who necessarily relied upon the services of the air traffic control tower there) "had quite a few questions" for him concerning the marijuana possession charge against McDowell, expressing "[a] concern primarily on the part of pilots for . . . their safety in utilizing the Groton facility." [9] Among those raising questions were John Rutledge, the chief pilot for Pilgrim Airlines, a commuter or "air taxi" service which flies to Groton and other points in New England and New York,[10] and Captain Roger Bryan of Pilgrim. Captain Bryan indicated to Herron—"on several occasions" —that, in view of reports about McDowell's conduct, he felt that the Groton Airport "really wasn't as safe as it could be." [11] Herron testified that similar concerns had been expressed by other pilots for Pilgrim and for Coastal Airways, an "air taxi" service which also provides flying lessons and air charter service at Groton.[12] Moreover, Herron testified, the charges against McDowell were a matter of concern to other air traffic controllers at Groton, including Ron Schwartz, who was then serving as the training officer under Herron's command at Groton and served as acting chief of the Groton Tower in Herron's absence.[13]

Schwartz appeared as a witness at the CSC hearing in Springfield, and listed numerous pilots with Pilgrim Airlines, Yankee Airways and the Army National Guard who had discussed McDowell's status with him.[14] Among them was Rutledge of Pilgrim, who, as Schwartz recalled,[15]

> told me that he had informed or had told his pilots that he was concerned about Mr. McDowell's position and informed his pilots that if they heard Mr. McDowell's voice on the radio to use extra caution. Those are his words.

Schwartz summarized at the hearing the nature of the concerns which had been expressed to him by those who flew into Groton Airport: [16]

> They were concerned for [McDowell's] ability to be . . . competent, make decisions, timely accurate decisions [, and] for the safety of their aircraft. They're flying in conditions where they can't see out the window. They have to depend on a Controller, and they were questioning whether there was going to be a crew of competent[,] able people up there.

In addition to commercial and military pilots, the air traffic controllers who were trainees at Groton (apparently learning and serving under McDowell, who had "journeyman" status) expressed concern to Schwartz. According to Schwartz, their questions included "[w]hat their responsibilities were, whether [McDowell] was capable, if he did something wrong, what their responsibilities were, . . . how much they could be held responsible . . . ." [17]

On the basis of the testimony and exhibits offered at the hearing in Springfield, regional CSC Chief Appeals Officer Grossman issued a decision sustaining the FAA's determination to remove McDowell from his position. In that decision, dated June 4, 1975, the Appeals Officer wrote: [18]

> The record satisfies us that the Federal Aviation Administration could reasonably conclude that the marijuana possession conviction could affect Mr. McDowell's worthiness as an Air Traffic Control Specialist and that a rational nexus does exist between the marijuana conviction and the conduct to be expected of an Air Traffic Controller, which would ensure

9. *Id.* at 44.

10. *Id.*; regarding Rutledge's view of the matter, *see also id.* at 57.

11. *Id.* at 45–46.

12. *Id.* at 46.

13. *Id.* at 47–48, 57.

14. *Id.* at 57.

15. *Id.*

16. *Id.* at 61.

17. *Id.* at 58.

18. Decision of CSC Regional Chief Appeals Officer, June 4, 1975, p. 7.

the trust and confidence of the flying public.

The plaintiff appealed this determination to the Appeals Review Board of the CSC, which affirmed the Appeals Officer's decision on March 12, 1976. The Appeals Review Board concluded:[19]

> Based on its review of the record evidence, the Board agrees with the Field Office [Appeals Officer] that the reason for appellant's removal, i. e., Criminal Conduct as stated in the advance notice and decision[,] is fully substantiated and is sustained. The Board also concurs in the Field Office finding that the agency in this case could reasonably conclude that there is a rational nexus between appellant's conviction for marijuana possession and his job performance as an Air Traffic Control Specialist. The Board finds, as did the Field Office, that appellant's removal based on the sustained reason and prior disciplinary record is not arbitrary, capricious, or unreasonable but [is] for such cause as will promote the efficiency of the service.

Having exhausted all administrative appeals procedures open to him, McDowell commenced this action, seeking reinstatement to his former position as air traffic controller, as well as back pay and benefits.[20] In due course, the parties cross–moved for summary judgment on the basis of the undisputed facts established in the administrative proceedings.

### The Plaintiff's Contentions

McDowell makes three arguments in support of his claim for relief from the administrative decision to remove him. First, he argues that the FAA's decision that his criminal conduct was sufficient cause to discharge him in the interest of promoting the "efficiency of the service" was not supported by substantial evidence. Second, he contends that the decision was improperly predicated on hearsay evidence. Third, he avers that he was not afforded an opportunity to present at the administrative level proof that he was a competent air traffic controller. The issues raised by these contentions are discussed *seriatim* below; for the reasons stated herein, the court finds merit in none of the plaintiff's arguments.

### 1. Cause for Removing the Plaintiff

At the time of McDowell's discharge, 5 U.S.C. § 7501(a) provided that a federal employee covered by the civil service laws could be discharged or suspended without pay "only for such cause [as] will promote the efficiency of the service."[21] The regulations then in effect provided for the removal of a federal civil servant for "[c]riminal, infamous, dishonest, or notoriously disgraceful conduct." 5 C.F.R. § 731.201(b) (1974).[22]

---

**19.** Decision of CSC Appeals Review Board, March 12, 1976, pp. 3–4.

**20.** The original defendant, Brock Adams, has been succeeded as Secretary of Transportation by defendant Neil E. Goldschmidt. The defendant, who is sued only in his official capacity, is the executive officer ultimately responsible for the actions of the FAA. *See* 49 U.S.C. § 1652(e)(1) (establishing the FAA within the Department of Transportation).

**21.** The relevant statutory scheme was revised with the enactment of the Civil Service Reform Act of 1978, Pub.L.No.95–454. The pertinent section of the current law provides:

> Under regulations prescribed by the Office of Personnel Management, an agency may take an action covered by this subchapter against an employee only for such cause as will promote the efficiency of the service.

5 U.S.C. § 7513(a). The subchapter in question covers the following "actions": (1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; (5) a furlough of 30 days or less. 5 U.S.C. § 7512.

**22.** Since 1975, the applicable regulations have specified that a determination whether a disciplinary action "will promote the efficiency of the service" depends upon:

> (1) Whether the conduct of the individual may reasonably be expected to interfere with or prevent effective performance in the position applied for or employed in; or
>
> (2) Whether the conduct of the individual may reasonably be expected to interfere with or prevent effective performance by the employing agency of its duties and responsibilities.

5 C.F.R. § 731.202(a). Certain "specific factors" are listed in 5 C.F.R. § 731.202(b) as "reasons which may be used in making a deter-

■ The decision that the criminal conduct of McDowell, which was evidenced by his Superior Court conviction, was sufficient cause for his discharge was the FAA's to make. This court's role is a limited one; indeed, the scope of judicial review of agency personnel decisions is even narrower than the "substantial evidence" standard which the plaintiff would have the court adopt. Although the courts of appeals for some circuits have held that a district court must determine whether an adverse personnel decision is supported by substantial evidence,[23] the test in the Second Circuit is whether the agency's decision is "arbitrary and capricious." *McTiernan v. Gronouski,* 337 F.2d 31, 34 (2d Cir. 1964).[24] In articulating the proper scope of judicial review, the Court of Appeals for the Second Circuit stated:

> The taking of disciplinary action against government employees, including the invocation of the sanction of dismissal, is a matter of executive discretion, and is subject to judicial supervision only to the extent required to insure 'substantial compliance with the pertinent statutory procedures provided by Congress,' ... and to guard against arbitrary or capricious action.

*McTiernan v. Gronouski, supra,* 337 F.2d at 34, *quoting Hargett v. Summerfield,* 243 F.2d 29, 32 (D.C.Cir.), *cert. denied,* 353 U.S. 970, 77 S.Ct. 1060, 1 L.Ed.2d 1137 (1957). *See also United States v. Professional Air Traffic Controllers Organization,* 438 F.2d 79, 80–81 (2d Cir. 1970), *cert. denied,* 402 U.S. 915, 91 S.Ct. 1373, 28 L.Ed.2d 661 (1971); *Grebosz v. United States Civil Service Commission,* 472 F.Supp. 1081, 1084 (S.D.N.Y.1979); *Lee v. Bolger,* 454 F.Supp. 226, 232 (S.D.N.Y.1978); *Oates v. United States Postal Service, New York,* 444 F.Supp. 100, 102 (S.D.N.Y.1978); *Brech v. United States Immigration & Naturalization Service,* 362 F.Supp. 914, 917 (S.D.N.Y. 1973); *cf. Kletschka v. Driver,* 411 F.2d 436, 443 (2d Cir. 1969); *Finfer v. Caplin,* 344 F.2d 38, 41 (2d Cir.), *cert. denied,* 382 U.S. 883, 86 S.Ct. 177, 15 L.Ed.2d 124 (1965).

■ The plaintiff does not contend that the FAA and CSC failed to handle his case in "substantial compliance" with the relevant statutory procedures. Accordingly, under the test of *McTiernan v. Gronouski,* this court may reverse the administrative determination to remove him from his position only if it is convinced that the decision was "arbitrary and capricious." The limited scope of review permitted under this standard was delineated by the Supreme Court in *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) (emphasis added):

> Under the 'arbitrary and capricious' standard the scope of review is a narrow one. A reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment ....
> *Although this inquiry into the facts is to*

mination under paragraph (a) of this section." Among these are "[c]riminal, dishonest, infamous or notoriously disgraceful conduct," 5 C.F.R. § 731.202(b)(2) and "[a]buse of narcotics, drugs, or other controlled substances," 5 C.F.R. § 731.202(b)(6). In addition, the current regulations provide:

> An employee shall not engage in criminal, infamous, dishonest, immoral, or notoriously disgraceful conduct, or other conduct prejudicial to the Government.

5 C.F.R. § 735.209.

**23.** *See, e. g., Alsbury v. United States Postal Service,* 530 F.2d 852, 854 (9th Cir.), *cert. denied,* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976); *Polcover v. Secretary of the Treasury,* 477 F.2d 1223, 1226–27 (D.C.Cir.), *cert. denied,* 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973); *Charlton v. United States,* 412 F.2d 390, 395 (3d Cir. 1969). *Finfer v. Caplin,* 344 F.2d 38, 40–41 (2d Cir.), *cert. denied,* 382 U.S. 883, 86 S.Ct. 177, 15 L.Ed.2d 124 (1965), appears to indicate that the "substantial evidence" test might also apply in this circuit, but the *McTiernan v. Gronouski* "arbitrary and capricious" standard has in fact prevailed. *See* p. 604, *infra.*

**24.** While the difference between these two standards is difficult to articulate with any degree of precision, it is clear that the "substantial evidence" test "afford[s] a considerably more generous judicial review than the 'arbitrary and capricious' test ...." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 143, 87 S.Ct. 1507, 1513, 18 L.Ed.2d 681 (1967).

*be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.'* Citizens to Preserve Overton Park v. Volpe [401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)]. The agency must articulate a 'rational connection between the facts found and the choice made.' *Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962). While we may not supply a reasoned basis for the agency's action that the agency itself has not given, *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947), we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned. *Colorado Interstate Gas Co. v. FPC,* 324 U.S. 581, 595, 65 S.Ct. 829, 836, 89 L.Ed. 1206 (1945).

■ Measured by this standard, the FAA's decision to terminate McDowell's employment may not be reversed, for it was rationally connected to the underlying facts. The administrative record discloses a rational "nexus," *see Gueory v. Hampton,* 510 F.2d 1222, 1226 (D.C.Cir.1975); *Grebosz v. United States Civil Service Commission, supra,* 472 F.Supp. at 1086, between the criminal conduct of McDowell and the FAA's legitimate and important goal of promoting the efficiency of its operations.

As the evidence in the administrative record makes clear, the position of air traffic controller is a sensitive one; persons so employed must make fine judgments upon which the safety and lives of numerous pilots, passengers and others depend. The

successful performance of an air traffic controller's duties requires not only the technical competence of the controller (a factor not in issue in this case), but also the trust which pilots place in the reliability of the controller whose instructions guide them in navigating their aircraft. There is nothing irrational, arbitrary or capricious about the determination that an air traffic controller's well–publicized misconduct involving criminal possession of a controlled substance might adversely affect the confidence which pilots using an airport have in his commands; to the contrary, the record below establishes the rational basis for this determination. More broadly, the confidence of pilots in the reliability of the FAA's regional and national air traffic control system may well be eroded by their perception that persons who recently engaged in such criminal acts, while employed as controllers, are still eligible to direct the traffic patterns of commercial, private and military aircraft.[25] The administrative record, from which the court has quoted at some length, provides ample support for the FAA's determination to remove McDowell from his position. *Cf. Dew v. Halaby,* 317 F.2d 582 (D.C.Cir. 1963), *cert. dismissed,* 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 550 (1964) (holding that it was not arbitrary and capricious for the FAA to discharge air traffic controller on the basis of his admissions that, before joining the FAA, he had smoked marijuana and engaged in homosexual acts, even though he was neither arrested nor convicted for that conduct).

■ The plaintiff argues that his discharge was nonetheless improper because

---

**25.** Consideration by the FAA of this factor—which is a question apart from either the technical competence of the air traffic controller or the confidence which individual pilots had in McDowell's judgment—was proper. As the regulations now in force make clear, it is rational for an agency to determine that removal of an employee "will promote the efficiency of the service" where it reasonably expects that the "conduct of the individual" will "interfere with or prevent effective performance by the employing agency of its duties and responsibilities." 5 C.F.R. § 731.202(a)(2). The FAA's performance of its air traffic control responsi-

bilities is so bound up with its reputation for reliability among those who fly airplanes that the efficiency of its operations would be hindered if it were unable to discharge those controllers whose criminal conduct calls into question the agency's ability to provide sound and reliable air traffic guidance. *Cf. Wathen v. United States,* 527 F.2d 1191, 1200–01, 208 Ct.Cl. 342 (1975), *cert. denied,* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976) ("public image considerations" may be "a sufficient basis for discharging an employee," particularly where an agency has a special "need to maintain public confidence in its image of integrity").

the FAA erred in accepting the record of his conviction as proof of the criminal conduct which formed the basis for the agency's decision.[26] McDowell claims that he no longer stands convicted of any crime, because his criminal record was sealed pursuant to Mass.Gen.L. ch. 94C, § 34, as of September 22, 1974. *See* Mass.Gen.L. ch. 94C, § 44 (a person whose record is sealed under § 34 may with impunity "fail to recite or acknowledge" his arrest and conviction, or the disposition, including the sealing of the record, of his case). It is significant, however, that at the time the plaintiff was removed from his position, he *had* a public criminal record for possession of marijuana; his record was not (and could not be) sealed until September 1974, three months after he was discharged. *Contrast* 21 U.S.C. § 844(b) (providing that, in certain federal drug prosecutions of first–time offenders, at the option of sentencing court, no judgment of conviction is ever entered, proceedings are "deferred" until successful completion of probation, at which time—without any adjudication of guilt—the prosecution is dismissed and defendant may apply for expungement of records of arrest and prosecution). While this may appear to be mere formalism, it remains the law of Massachusetts that a conviction is a matter of public record unless and until it is sealed. Even if the plaintiff's argument that Mass. Gen.L. ch. 94C, §§ 34 & 44 somehow undid his conviction as of September 1974 is correct, it would not be applicable to the use of that record in June 1974 as evidence of the underlying misconduct.

Moreover, the plaintiff's statutory interpretation appears to be somewhat strained. The provisions of Massachusetts law upon which McDowell relies do not purport to *undo* a criminal conviction that is already a

*fait accompli.* Rather, they merely mitigate the effects of certain convictions by protecting convicted persons from some collateral consequences of such convictions. The Supreme Judicial Court of Massachusetts has interpreted Mass.Gen.L. ch. 94C, § 34 as a statute which "limit[s] . . . access to court proceedings and official records." *Ottaway Newspapers, Inc. v. Appeals Court*, 372 Mass. 539, 546 & n.9, 362 N.E.2d 1189, 1194 & n.9 (1977). The plaintiff has not drawn to the court's attention (nor has the court's research revealed) any construction by the courts of Massachusetts which suggests that the purpose and effect of Mass.Gen.L. ch. 94C, §§ 34 & 44 is to mandate that there be no possible legal consequences of a conviction. It would be inappropriate for a federal court in Connecticut to give a more expansive interpretation to the Massachusetts law, regardless of its views of the wisdom of that law.

In any event, FAA's cause for dismissing McDowell was his "criminal conduct," not the condition of the records of the Superior Court for Hampden County. Even if the plaintiff's conviction is deemed to have been retroactively undone by virtue of Mass.Gen.L. ch. 94C, §§ 34 & 44, the fact that McDowell engaged in criminal conduct—which the plaintiff has not denied before this court—remains. It is such misconduct, rather than the existence of a record of a judgment of conviction, with which the FAA was properly concerned. *See generally Finfer v. Caplin, supra* (upholding removal of Internal Revenue Service ["IRS"] employee acquitted of bribery); *Wathen v. United States*, 527 F.2d 1191, 1202, 208 Ct.Cl. 342 (1975), *cert. denied*, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976) (upholding removal of IRS agent on grounds of criminal conduct, where notification of

---

**26.** The basis for the FAA's dismissal of the plaintiff was criminal conduct (of which his conviction was evidence), rather than the conviction itself. The contrary statement of the Regional CSC Chief Appeals Officer, *see* Decision of Regional CSC Chief Appeals Officer, June 4, 1975, p. 5, is a mischaracterization of the FAA's position. Because the Appeals Officer's view of the agency's action is not a matter which implicates the "expertise of the agency,"

the court does not defer to it. *See H. W. Wilson Co. v. United States Postal Service*, 580 F.2d 33, 37 (2d Cir. 1978). Similarly, the court accords no weight to the view of the FAA Hearing Officer that "[e]rosion of public confidence in the service is not an issue." FAA Tr. at 68. For the reasons stated at p. 605 & n. 25, *supra*, the Hearing Officer's statement is mistaken.

removal was given before the agent was indicted and where agent was subsequently acquitted of the criminal charge; "acquittal of a criminal charge does not erect a bar to adverse action in respect of one's federal employment"); *Taffel v. Hampton,* 463 F.2d 251 (5th Cir. 1972) (per curiam) (upholding removal of post office employee for shoplifting, although he was never convicted); *Dew v. Halaby, supra,* 317 F.2d at 586 & n.8 (upholding dismissal of air traffic controller for criminal conduct antedating employment, including smoking marijuana, although no criminal charges had ever been brought against him for such conduct). Therefore, even if the plaintiff's interpretation of the Massachusetts statute were correct, the FAA would have been justified in removing McDowell for his misconduct. *See Turner v. Campbell,* 581 F.2d 547, 548–49 (5th Cir. 1978); *Taylor v. United States Civil Service Commission,* 374 F.2d 466, 469–70 (9th Cir. 1967); *Finfer v. Caplin, supra,* 344 F.2d at 40–41; *In re Paoli,* 49 F.Supp. 128, 130 (N.D.Cal.1943).

■ Finally, the plaintiff argues that even if the misconduct which resulted in his conviction justified some disciplinary action, dismissal was too harsh a penalty. In support of this position, the plaintiff cites only *Jacobowitz v. United States,* 424 F.2d 555, 191 Ct.Cl. 444 (1970). There, a twenty–two year veteran of government service, employed as a revenue officer with the IRS, was accused, *inter alia,* of "gross negligence in failing to promptly process checks received from taxpayers" in violation of internal IRS policies. The Court of Claims held that his dismissal on the basis of this misconduct "after 22 years of satisfactory government service" was "to[o] harsh and out of all proportion to the offense charged," which was "minor in nature," and for which the plaintiff had already been reprimanded by a superior. *Jacobowitz v. United States, supra,* 424 F.2d at 563.

The case at bar is readily distinguishable from *Jacobowitz.* In this case, unlike *Jacobowitz,* the plaintiff (who had been an FAA air traffic controller for approximately seven years)[27] was charged with criminal conduct, rather than the violation of an agency's internal procedures. A transgression of a criminal law—whatever the court's view of the wisdom of such a law—is more serious an offense than a breach of an agency rule governing the agency's internal operations.

The possession of marijuana, while not a "minor" offense in the sense that the non–criminal misconduct in *Jacobowitz* could fairly be so categorized, is of course not necessarily a sufficient basis for discharging a federal employee. Dismissal might, for example, be an inappropriately harsh sanction for such conduct where the offense was committed in the remote past, where the employee's job involves routine tasks and does not require him to make sensitive judgments or determinations upon which the safety of others depend, or where the agency does not depend upon the employee to act in a manner which preserves the trust and confidence of those who must rely upon his judgment or upon the agency's reputation for accuracy, dependability or integrity. *See Young v. Hampton,* 568 F.2d 1253, 1256, 1261, 1265–66 (7th Cir. 1977) (conviction for possessing controlled substances did not justify dismissal of civilian army employee engaged in "mundane product inspection tasks" with "very little contact with the public in performing his job"). However, in this case these very factors support the FAA's exercise of its discretion to remove McDowell from his position. As in *Dew v. Halaby, supra,* the plaintiff's duties as an air traffic controller "required split–second judgment and daily responsibility for many hundreds of lives." *Young v. Hampton, supra,* 568 F.2d at 1261 (distinguishing *Dew* on this basis). Indeed, this case is an even stronger one for dismissal than was *Dew* in that the misconduct at issue here occurred while the plaintiff was an FAA air traffic controller, and therefore cannot be dismissed as "unfortunate adolescent acts" antedating his employment by the FAA, *Dew v. Halaby, supra,* 317 F.2d at 589 (Wright, J., dissenting).

27. *See* CSC Tr. at 65.

Moreover, the FAA was concerned with more than merely the conviction for possession of marijuana in determining that McDowell ought to be dismissed. As the notification of the agency's intention to remove McDowell stated, McDowell had been absent without leave three times in the months preceding his conviction. For the first of these incidents he was reprimanded; for the other two, he was given a thirty-day suspension.

McDowell's position as an air traffic controller was sufficiently sensitive that the FAA could reasonably insist not only that he perform his work capably, but that he also refrain from committing criminal acts involving controlled substances and avoid other conduct which might fairly indicate irresponsibility or a lack of judgment incompatible with the position to which he had been appointed. The plaintiff failed to live up to the standards which the FAA reasonably set for those performing such duties. The court cannot conclude that the agency's decision to dismiss him was, on the administrative record, so harsh or out of proportion to the plaintiff's misconduct that it was arbitrary and capricious.

Although the court might well have concluded that a sanction less severe than dismissal would have been appropriate in this case, had that decision been entrusted to the judicial branch, such a decision is not the court's to make. Whether or not the court agrees with the administrative determination to remove the plaintiff from his position (or with the legislative decision that possessing marijuana still ought to be a crime), the FAA's decision was undoubtedly a reasoned one; it was clearly based upon a rational connection between the plaintiff's misconduct (and the effects thereof) and the FAA's need to protect and promote the integrity of its air traffic control operations. The court cannot set aside the FAA's judgment that dismissing the plaintiff would further its goal of the "efficiency of the service" without impermissibly exceeding the limits on the scope of judicial review imposed by the applicable ("arbitrary and capricious") standard.

## 2. The Use of Hearsay Evidence to Support the FAA's Decision

McDowell strenuously argues that the decision to discharge him cannot stand because the FAA's conclusion that its goal of maintaining and promoting confidence in the integrity of its air traffic control system would be furthered by dismissing him was supported only by hearsay evidence. Specifically, McDowell contends that the hearsay statements of pilots and air traffic controllers concerning their fears and concerns about his presence in the control tower at Groton Airport—which were repeated at the FAA and CSC hearings by FAA officials Livingston, Herron and Schwartz—do not provide sufficient support for the decision to dismiss him.

The plaintiff's position ignores *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), in which the Supreme Court held that hearsay evidence is admissible in an administrative proceeding, and may even constitute "substantial evidence" in support of a determination, where (unlike this case) that standard guides the court's review of the agency's decision. In evaluating the evidence on which an agency relies, the court is not bound by the fact that the evidence is technically hearsay; rather, it must determine whether the evidence is of sufficient "reliability" and "probative value" to justify its use as a basis for the administrative decision. *Richardson v. Perales, supra*, 402 U.S. at 402, 91 S.Ct. at 1427.

The principal purpose and effect of the hearsay in question here was to establish that persons who rely on the Groton air traffic control tower were troubled by the fact that McDowell had been charged with (and was ultimately convicted of) possession of marijuana, and that removing him from that sensitive position would promote trust and confidence in the FAA's air traffic control operations among pilots. To the extent that the statements of pilots and air traffic controllers were introduced to establish the truth of the matter asserted, they were clearly hearsay. *See* Rule 801(c), Fed.

R.Evid. However, because the matter which the FAA sought to prove by introducing such evidence was the state of mind of the declarants, this type of hearsay would be admissible in a federal court under Rule 803(3), Fed.R.Evid. (statements "of the declarant's then existing state of mind, emotion, sensation, or physical condition" are not excludable, notwithstanding the rule against hearsay evidence). *Cf. Zippo Manufacturing Co. v. Rogers Imports, Inc.*, 216 F.Supp. 670, 683 (S.D.N.Y.1963) (Feinberg, J.) (answers to public opinion survey held admissible as "expressions of presently existing state of mind, attitude, or belief").

The rationale for permitting such statements to be received in evidence, even in a federal court in which (unlike the administrative proceedings below) hearsay is generally inadmissible, is their reliability. Such declarations of a person's state of mind are "considered trustworthy because their spontaneous nature makes them more reliable (or at least equally reliable) than declarations made on the stand at a time when memory may be impaired and external pressures have been brought to bear." J. Weinstein & M. Berger, Weinstein's Evidence ¶ 803(3)[01] at 803–92 (1979). It has been said that in statements covered by Rule 803(3), "the factor of contemporaneousness provides some assurance against fabrication." *Id.* The court is satisfied that the hearsay declarations at issue here are sufficiently reliable to provide a rational basis for the decisions reached by the FAA and CSC.

Moreover, these statements are highly probative of the FAA's contention that removing McDowell from the Groton air traffic control tower would further the agency's interest in preserving the confidence of pilots in the integrity of its operations.

In short, the reliability and probative value of the hearsay evidence to which McDowell objects are such that the evidence would probably have been admissible in a proceeding conducted under the strictures of the Federal Rules of Evidence; *a fortiori*, the use of such evidence in the administrative agency proceedings below, which are not governed by those rules, was proper.

### 3. The Failure to Permit the Plaintiff to Present Proof of His Professional Competence

■ McDowell argues that evidentiary rulings of FAA Hearing Officer Holmes impermissibly excluded testimony and documentary evidence establishing the competence of McDowell as an air traffic controller. This argument misses the point, for the ability of the plaintiff to perform his job has never been an issue in the proceedings concerning his removal. The "Notice of Proposed Removal" which commenced the administrative process mentioned only the plaintiff's criminal misconduct, not the lack of any technical skills, physical capability or other qualities relevant to his professional competence. At no time have these matters ever been assigned as cause to dismiss the plaintiff. As Hearing Officer Holmes correctly stated, the FAA "made no allegations whatever concerning [McDowell's] competence, quality of work performance or medical fitness for duty." [28] Evidence of McDowell's ability to perform his job was therefore probative of no facts relating to the agency's allegations, which were limited to the charges that the plaintiff had engaged in criminal conduct and that such conduct tended to undermine faith and confidence in the integrity of the Groton facility and the FAA's system of air traffic control. There was no error in the evidentiary rulings of the FAA Hearing Officer.

### Conclusion

The decision of the FAA to discharge McDowell from his position as an air traffic control specialist was not arbitrary and capricious, in that there was a reasonable and logical connection between the agency's legitimate goals of furthering the "efficiency of the service" and McDowell's removal; the court cannot conclude that the FAA lacked evidence of his criminal misconduct,

**28.** Report of FAA Hearing Officer, Nov. 13, 1974, p. 3.

or that such misconduct (considered together with prior acts of McDowell which warranted discipline) was not so serious as to justify his dismissal. The court finds no merit to McDowell's arguments that hearsay evidence considered in the administrative proceedings should have been excluded, or that evidence of his competence as an air traffic controller, which was excluded, should have been admitted. Accordingly, under the narrow standard of judicial review by which this court is bound (the "arbitrary and capricious" test), there is no basis for this court to reverse the administrative determination from which the plaintiff has appealed. The plaintiff's motion for summary judgment is therefore denied and the defendant's cross–motion for summary judgment is granted. Judgment shall be entered for the defendant, dismissing the complaint.

It is so ordered.

United States District Court, N. D. Illinois, E. D.