NATIONAL LABOR RELATIONS BOARD v. AMALGAMATED MEAT CUTTERS & BUTCHER WORKMEN OF NORTH AMERICA, LOCAL NO. 127.

No. 13343.

United States Court of Appeals Ninth Circuit.

March 18, 1953.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Owsley Vose, James A. Ryan, Washington, D. C., and Louis Penfield, Attys., N. L. R. B., San Francisco, Cal., for petitioner.

1. Sec. 8(b) (2): "It shall be an unfair labor practice for a labor organization or its agents—(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership".

2. Sec. 8(b) (1) (A): "It shall be an unfair labor practice for a labor organiza-

Charles P. Scully, San Francisco, Cal., for respondent.

Before HEALY, ORR and POPE, Circuit Judges.

POPE, Circuit Judge.

Upon an·application for enforcement of an order finding the respondent Union guilty of unfair labor practices under the National Labor Relations Act, as amended, 29 U.S.C.A. § 151 et seq., we are called upon to review the Board's conclusions (1) that the Union violated § 8(b)(2) [1] of the Act by causing Armour and Company, here called the Company, to discharge one Wyatt for his refusal to join the Union. and (2) that the Union violated § 8(b)(1) (A) [2] by warning Wyatt and his wife, also an employee, that they would lose their jobs if they did not join the Union.

The Board's finding on the first of these charges, namely, that the Union caused Wyatt's discharge, is without support in the record, and must be rejected. The Union representative was Weborg. The employer's representative was Gearhart. The only testimony that Weborg demanded or requested of Gearhart that Wyatt be. discharged was that given by Wyatt. He testified that during a conversation with Gearhart, when Gearhart indicated that he should not come back to work the following morning, Gearhart said that "Weborg told me 'I could not use you anywhere in the plant because you would not join the Union.'" Aside from this statement, hearsay as against the Union,[3] there was nothing of substance either direct or circumstantial to show

tion or its agents—(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7 * * *."

3. The trial examiner held that Gearhart made that statement and that it was binding upon the Company although hearsay as to the Union. The Board's order was issued against both the union and the Company, the latter being charged with violation of § 8(a) (3) of the Act. The Company complied with the order and hence enforcement is sought only against the Union.

Wyatt's discharge was effected at the request of the Union.

The trial examiner, whose findings were adopted by the Board, found that there was no general arrangement between Weborg and Gearhart that new employees would be required to join the Union. The Company and the Union had no union-security agreement. Approximately 100 employees in the plant were not members of the Union and the trial examiner held that presumably they were not disturbed in their jobs. Gearhart testified that the Union did not demand or request Wyatt's discharge and Weborg said the same thing.

Wyatt, without previous experience in the kind of work he was here doing, had been given to understand that he was employed to take the place of another man who was absent on account of sickness. Gearhart testified that when Wyatt was allowed to go it was because he was replaced on the job by another man who had greater seniority and that there was no other work at which he cared to place him. This testimony is not contradicted.

■ Thus we are left with nothing but the hearsay testimony quoted above to support the Board's finding that the Union caused the discharge. § 10(b) of the Act, Title 29, § 160(b), provides: "Any such proceeding shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure for the district courts of the United States * * *." Under that provision the hearsay evidence must be excluded from consideration by the Board and by us. Superior Engraving Co. v. National Labor Relations Board, 7 Cir., 183 F.2d 783, 792, 794, certiorari denied 340 U.S. 930, 71 S.Ct. 490, 95 L.Ed. 671. Wholly apart from this provision of § 10(b), in proceedings conforming to the requirements of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., agency findings "cannot be based upon hearsay alone". Willapoint Oysters v. Ewing, 9 Cir., 174 F.2d 676, 691.

■ Notwithstanding this want of anything but hearsay to support this particular portion of the complaint against the Union, the trial examiner arrived at his conclusion by saying: "However, the circumstances set forth in the evidence establish in the case of E. A. Wyatt, Gearhart *must have been told* by the Union that the Union objected to the continuation of Wyatt's employment." (Emphasis added.) The Board is not permitted to arrive at conclusions based on such speculations.

The second ground of complaint against the Union, namely, that it urged, threatened and warned employees of the Company that they would have to join the Union because the Company and the Union were operating under a closed shop agreement is sought to be supported by the testimony of Mrs. Wyatt and of Wyatt, both of whom told of conversations with Weborg. She said that when the latter asked if she belonged to the Union she replied no, she thought it was an open shop, whereupon Weborg said that it was a closed shop and that she had to join. Whereupon she said: "Well if I have to join the Union I guess I may as well." But the testimony of Wyatt himself was very different. He said that Weborg when discussing membership in the Union said in answer to his question as to whether he had to belong to a Union, "No, Armour don't have a closed shop anywhere in the country". Wyatt then said to Weborg, "You told my wife that this morning", to which Weborg replied that she misunderstood him. Wyatt's testimony was that when Weborg asked him about union membership, Wyatt said that he belonged to the Teamsters, whereupon Weborg said "Well, you know you are supposed to belong to the Butchers union to work here". Wyatt's testimony then proceeded: "I said, 'Well, do I have to belong to any union to work here? Is this a closed shop?' He said, 'No, no. Armour don't have a closed shop anywhere in the country.' "

Thus, if the testimony of Wyatt alone is taken, it disproves this portion of the complaint. Weborg testified that although he solicited membership he made it clear

to both Wyatt and Mrs. Wyatt that union membership was not required for employment just as Wyatt himself said.

Of course the trial examiner had the right to credit the testimony of Mrs. Wyatt but, even so credited, it is insufficient to demonstrate the claimed unfair labor practice, much less any clear or fixed pattern in that direction. Even if this isolated incident did occur, to predicate a cease and desist order upon it is to magnify the inconsequential to the point where the action becomes an abuse of discretion. See Title 5 U.S.C.A. § 1009(e).

It is our judgment that when we apply the standards for review in these matters laid down in the Universal Camera case,[4] we cannot find that the record as a whole furnishes substantial evidence to support the Board's findings.

The petition for enforcement is denied.

---

4. Universal Camera Corp. v. Labor Bd., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.