Samuel JACOBOWITZ

v.

The UNITED STATES.

No. 134–68.

United States Court of Claims.

April 17, 1970.

As Amended July 15, 1970.

Sanford N. Leeds, New York City, attorney of record for plaintiff.

Joseph F. DiStefano, Washington, D. C., with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant, R. W. Koskinen, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

SKELTON, Judge.

Samuel Jacobowitz, plaintiff, a non-veteran career employee with more than 22 years of government service, filed this suit for back pay on the ground that his discharge from his position as a GS-9 Revenue Officer in the Internal Revenue Service was procedurally defective and that the decision removing him was arbitrary and capricious and not supported by substantial evidence. We have concluded that judgment should be entered for the plaintiff.

This case is before us on plaintiff's motion and defendant's cross-motion for summary judgment.

On May 6, 1965, a notice of proposed adverse action was issued to plaintiff by the District Director of the Internal Revenue Service at Hackensack, New Jersey. This notice contained three charges, namely:

CHARGE I. "Gross negligence in failure to promptly process checks received from taxpayers in violation of Section 1942.52 and Section 142.60 of the Rules of Conduct for Internal Revenue Service Employees (Revised October 1963) and failure to follow the procedures in Internal Revenue Manual, Part V, Section 5926.1 concerning receipt of Remittances."

There were two specifications of the above charge, substantially as follows:

(1) That on June 16, 1964 (the previous year), Plaintiff had submitted to the Cashier a certified check in the amount of $1,224.70 which plaintiff had signed for by registered mail on March 25, 1964.

(2) That on June 26, 1964, while reviewing plaintiff's cases, there was found a check in the amount of $32.63 payable to Internal Revenue Service, attached to a TY-14 delinquency investigation, which check was dated October 20, 1963.

CHARGE II. "False statements and falsification of records in violation of Section 1942.55 of the Rules of Conduct for Internal Revenue Employees (Revised October 1963) and failure to follow the procedures in Internal Revenue Manual, Part V, Section 5931, concerning Form 795."

There were fourteen Specifications under the foregoing Charge, of which Specification 4 was typical. It stated:

*Specification 4.* On your "Daily reports of Collection Activity", Forms 795, for the dates and times shown below, you reflected official stops at the premises of James Squicciarini, trading as Park Avenue Bakery, 118 Park Avenue, East Rutherford, New Jersey. In each instance, Forms 795 contained the notation "taxpayer not in—left message to contact me at the office." In an affidavit given to the Service on November 25, 1964, you stated that in all instances where the taxpayers were not in, you left a message on Form 2246 to contact you at the Hackensack Internal Revenue Service Office.

| Date of Form 795 | Time Shown for Stops |
|---|---|
| July 14, 1964 | 4:05 P.M. – 4:25 P.M. |
| July 21, 1964 | 4:05 P.M. – 4:20 P.M. |
| August 4, 1964 | 1:30 P.M. – 1:45 P.M. |
| August 6, 1964 | 1:40 P.M. – 1:50 P.M. |
| August 10, 1964 | 12:05 P.M. – 12:15 P.M. |
| August 13, 1964 | 1:05 P.M. – 1:20 P.M. |
| August 18, 1964 | 3:10 P.M. – 3:20 P.M. |
| August 21, 1964 | 2:05 P.M. – 2:20 P.M. |
| August 26, 1964 | 2:00 P.M. – 2:15 P.M. |
| August 28, 1964 | 3:30 P.M. – 3:40 P.M. |
| October 28, 1964 | 2:45 P.M. – 2:55 P.M. |

On your Daily Report, Form 795, for October 30, 1964, you reflected an official stop at the premises of James Squicciarini, and "desired information received."

Investigation revealed that the first contact made by someone from the Internal Revenue Service at the premises of James Squicciarini, 118 Park Avenue, East Rutherford, New Jersey, was made during the afternoon of October 30, 1964.

The substance of the 14 specifications under Charge II was that plaintiff had not in fact made the calls upon the delinquent taxpayers which he reported that he had made.

CHARGE III. "Failure to make effective use of time and failure to take effective collection action in performance of official Duties." [1]

The plaintiff made an oral reply to these charges on July 12, 1965, in which he denied all of the charges. At that time, he offered written statements of persons involved in 8 of the 14 specifications of Charge II, showing he had in fact made the calls described in the specifications. He also asked for a formal hearing and requested that all of the taxpayers be produced by subpoena at the hearing and before any final decision was made. The District Director advised plaintiff, on August 26, 1965, without any further hearing, that all of the charges and specifications thereunder were sustained and plaintiff was dismissed from his position effective September 10, 1965. The plaintiff appealed this decision to the Regional Commissioner of the IRS and requested a hearing.

The Regional Commissioner granted plaintiff a hearing which was held on October 13, 1965, before a hearing examiner. The IRS did not produce any of the taxpayers as witnesses at the hearing, nor anyone else who had any actual knowledge of whether or not the plaintiff made the calls on the taxpayers as stated

in his reports and which the IRS contended he did not make. The only witnesses of the IRS at the hearing were its inspectors who were sent out to investigate the case by talking to some of the taxpayers and others long after the calls were reported by plaintiff to have been made. All the inspectors knew was what someone else told them about plaintiff's not having made the calls, which at most was mere allegation and rumor and altogether hearsay.

The IRS introduced into evidence at the hearing the written statements the inspectors had obtained from some of the delinquent taxpayers on whom plaintiff said he called, and which statements stated plaintiff had not called on them as reported. These statements were introduced over the objection of plaintiff that they were hearsay and denied him the right of cross-examination. Plaintiff demanded the right to cross-examine the absent taxpayers who made the statements. It will be recalled that at the time of his oral reply to the charges before the hearing, plaintiff requested that all of the taxpayers be produced by the IRS at the hearing. This was not done. During the hearing, when it became apparent the IRS was not going to produce the taxpayers as witnesses, the plaintiff again demanded that they be produced and that he be given the right to cross-examine them. He requested that the hearing be adjourned until this could be done. The IRS objected to the production of the taxpayers at the hearing even though they were its witnesses and it relied on their statements to sustain the charges against the plaintiff. It contended that the examiner did not have the power to subpoena them, which was true. However, it should be pointed out that the IRS made no showing whatever that the taxpayers had been asked to appear as witnesses, nor that it had made any effort to have them present, nor that the taxpayers had refused or were unable to be present. The plaintiff, on the other hand, tried to produce the taxpayers

1. There were two specifications to Charge III, but inasmuch as this charge was dismissed, there is no need to include the specifications here.

at the hearing as witnesses and succeeded in producing three of them but failed to obtain the presence of the others. Plaintiff says on page 64 of his motion for summary judgment:

Plaintiff made every effort to produce the taxpayers at the hearings. He was successful in producing three (Mr. and Mrs. Squicciarini and Mrs. Jean Travis), * * *.

The defendant denies that plaintiff made an effort to produce the taxpayers as witnesses. It is true that the record does not show what effort plaintiff made to produce them, but the fact that he did produce three of them indicates that he did make an effort to have all of them appear as witnesses and supports his statement to that effect.

The plaintiff appeared in person at the hearing before the IRS examiner and testified in his own behalf. He denied each and every specification in Charges II and III and said they were not true. He testified that he made every call on the delinquent taxpayers as shown on his reports, and he introduced into evidence written statements of eight of the fourteen taxpayers involved which stated he had in fact called on them as reported. Three of the taxpayers appeared in person and testified at plaintiff's request and they said plaintiff had called on them. The plaintiff offered in evidence a tape recording he had made of his conversations with the taxpayers after the charges had been filed to show by the voices of the taxpayers their admission that he had called on them. The examiner not only refused to admit the tape into evidence, but also refused to even listen to it before he rejected it.

The plaintiff offered to testify that the charges were filed because of bias and prejudice against him by his superior because he had filed two grievance procedures against his superior previously and had received a 90-day letter because of it. The examiner refused this testimony.

The plaintiff admitted the facts set forth in Charge I, but said it was a frequent occurrence in the IRS for checks to get misplaced temporarily and it was not a matter of concern to anyone. This was later confirmed by other IRS employees who testified at the hearing. Plaintiff also testified that his group clerk should have found the checks when they were in the files. The late cashing of these checks did not cause any loss to anyone. The plaintiff had received a reprimand for this occurrence and had thought the matter closed until the charge was filed.

At the conclusion of the hearing, the IRS examiner sustained Charge I, sustained 10 of the 14 specifications of Charge II and dismissed Charge III. This became the decision of the Regional Commissioner of Internal Revenue.

The plaintiff appealed to the New York Regional Civil Service Commission and a hearing was held May 2, 1966. The Commission reversed the IRS decision, holding that plaintiff should have been allowed to introduce the tape recording and should have been allowed to testify the charges were of a retaliatory and discriminatory nature, and remanded the case to the IRS for a further hearing.

Both parties appealed to the Board of Appeals and Review of the Civil Service Commission. The Board decided on September 6, 1966, that the rejection of the tape recording and retaliatory evidence was not error and remanded the case to the Regional Civil Service Commission and ordered it to adjudicate the case on its merits. A further hearing was held by the Regional Commission on October 10, 1966. Thereafter, the Regional Commission sustained Charge I and six specifications of Charge II and denied plaintiff's appeal. Plaintiff again appealed to the Board of Appeals and Review, which denied his appeal on February 14, 1967. He then appealed to the Civil Service Commission in Washington, who denied his appeal on June 8, 1967. This suit followed.

The plaintiff maintains that the agencies involved here committed error in ad-

mitting *hearsay statements into evidence* over his objection. He contends that such evidence is not admissible. This contention would be valid in a trial type proceeding in a court of law. It has long been the rule that hearsay evidence is inadmissible in a court trial, if objected to, unless it falls within one of the recognized exceptions to the hearsay rule. If hearsay is not objected to, it may be received by the court like any other evidence. Whether or not it is competent or has any probative force when admitted into evidence by a court is quite a different question, the answer to which varies among the various jurisdictions. For instance, in Texas, hearsay evidence is regarded as no evidence at all, is wholly incompetent and without probative force and will not support a finding of fact nor the judgment of a court, whether objected to or not. See Texas Co. v. Lee, 138 Tex. 167, 157 S.W.2d 628 (1941); Knapik v. Edison Bros., 313 S. W.2d 335, 337 (Tex.Civ.App.1958), writ refused; and 79 A.L.R.2d 945. This is also the rule in Georgia. See Martin v. Alford, 214 Ga. 4, 102 S.E.2d 598 (1958); Jackson v. Jackson, 209 Ga. 85, 70 S.E.2d 592 (1952); 79 A.L.R.2d 940. However, the Supreme Court of the United States said in Diaz v. United States, 223 U.S. 442, 450, 32 S.Ct. 250, 252, 56 L.Ed. 500 (1912), which is the majority rule:

> * * * So, of the fact that it was hearsay, it suffices to observe that when evidence of that character is admitted without objection, it is to be considered and given its natural probative effect as if it were in law admissible. * * *

See cases cited in 79 A.L.R.2d 897–909. The statement in the *Diaz* case is in accord with the general rule that once hearsay evidence is properly admitted into evidence in a court trial, it is to be considered if it has any probative value.

Regardless of the rules of practice as to the admissibility of hearsay evidence in the courts of the various jurisdictions, they do not govern or control the admissibility of such evidence in administrative hearings. It has been held that hearsay evidence is admissible in administrative hearings so long as the evidence upon which a decision is ultimately based is both substantial and has probative value. Morelli v. United States, 177 Ct.Cl. 848, 853–854 (1966); Montana Power Co. v. Federal Power Commission, 87 U.S.App.D.C. 316, 185 F.2d 491, 497 (1950), cert. denied, 340 U.S. 947, 71 S.Ct. 532, 95 L.Ed. 683 (1951); and Willapoint Oysters, Inc. v. Ewing, 174 F.2d 676, 690 (9th Cir. 1949), cert. denied, 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527.

It is academic, of course, that the governing regulations of the administrative agency involved, and applicable statutes must be applied and enforced in any given case in considering the admission or rejection of hearsay evidence. For instance, in Fletcher v. United States, 392 F.2d 266, 183 Ct.Cl. 1 (1968) and Glidden v. United States, 185 Ct.Cl. 515 (1968) we held that hearsay evidence should not have been admitted because the applicable regulations were not followed. On the other hand, a majority of the court held that such evidence was properly admitted in Peters v. United States, 408 F.2d 719, 187 Ct.Cl. 63 (1969) under the regulations in that case.

In our case, Section 19(14)3.63(4) of the Internal Revenue Service Regulations provides:

> * * * The hearing is an administrative proceeding, not a court proceeding, and legal rules of evidence will not be employed. * * * [T]he hearing officer may accept the deposition or affidavit of the [absent] witness.

The regulations of the Civil Service Commission have similar provisions. See Hearings, Subpart C, 5 C.F.R. § 772.305(c) (4) (1969), where is it stated:

> (4) A representative of the Commission shall conduct the hearing and shall afford the parties opportunity to introduce evidence (including testimony and statements by the appellant,

his representative, and representatives of the agency, and witnesses), and to cross-examine witnesses. Testimony is under oath or affirmation. Rules of evidence are not applied strictly, but the representative of the Commission shall exclude irrelevant or unduly repetitious testimony.

The Supreme Court said in Consolidated Edison Co. of New York v. NLRB, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938), in construing the NLRB statute which provided "the rules of evidence prevailing in courts of law and equity shall not be controlling":

The obvious purpose of this and similar provisions is to free administrative boards from the compulsion of technical rules so that the mere admission of matter which would be deemed incompetent in judicial proceedings would not invalidate the administrative order. [Id. at 229–230, 59 S.Ct. at 217.]

It will not noted that in our case the applicable provisions of the IRS Regulations (" * * * legal rules of evidence will not be employed * * * ") and of the Civil Service Commission Regulations (" * * * Rules of evidence are not applied strictly * * * ") are very similar to the NLRB statute construed by the Supreme Court in the *Consolidated Edison* case, above.

■ We conclude that the hearsay evidence of the inspectors and absent witnesses was admissible into evidence over the objection of plaintiff. We also conclude that the hearsay statements of plaintiff's absent witnesses, which were not objected to by defendant, were also admissible.

The plaintiff also contends that the decision against him on Charge II is invalid because it is not supported by substantial evidence. It will be noted that in this case in the final hearing of the Commission, the sole evidence against him consisted of a hearsay affidavit of an inspector and hearsay statements of two taxpayers and of two of the wives of taxpayers (one a Mrs. Emr), all taken by

IRS inspectors and stating that they had not been visited by any IRS employee and that they had not seen a message card (Form 2246). In five other instances, one of the inspectors stated in an affidavit be executed about eleven months after his interviews that he was *orally* informed by individuals that they had never been visited by any IRS employee and had never received or found any IRS messages. This affidavit of the inspector was introduced in evidence. The plaintiff, on the other hand, testified in person that he had made all of the calls and left messages as reported by him, and he introduced four statements of taxpayers, (one of whom was Mr. Emr who had given a statement against the plaintiff to the inspector), all of whom said plaintiff had made the calls. Three of these persons had given contrary statements to the inspector. In addition, plaintiff produced Mrs. Travis, one of the taxpayers, in person, who testified that plaintiff had made the calls on her and that she had so advised the inspector, but the inspector stated in his affidavit that she had told him plaintiff had not made the calls. (See Final Decision of Regional Director of Civil Service Commission of February 4, 1966, Tab FF of the Administrative Record, pages 4–6.) The Commission sustained all of Charge I and six specifications of Charge II, including the specification relating to Mr. Emr, despite taxpayer Emr's statement that plaintiff had made the calls on him. All of these facts, most of them on the part of the IRS being offered to prove negative facts, point to the undesirability and unreliability of hearsay statements. Plaintiff says this is particularly true of the statements made by taxpayers to the inspectors for the logical reason that the taxpayers who made the statements were themselves delinquent in the payment of their income taxes and would through fear, if for no other reason, say whatever an IRS inspector wanted them to say. We are inclined to believe there is some truth in this allegation. Some of plaintiff's witnesses testified that when they gave information to

the inspectors that was favorable to the plaintiff, the inspectors would not take their statements. Whether this is so or not, the situation was such that it could be open to the condemnation the Supreme Court gave in Walsh v. Rogers, 54 U.S. (13 How.) 283, 287, 14 L.Ed. 147 (1851), over a hundred years ago when it said in referring to the taking of *ex parte* statements:

* * * [T]estimony thus taken is liable to great abuse. At best, it is calculated to elicit only such a partial statement of the truth as may have the effect of entire falsehood. *The person who prepares the witness and examines him can generally have just so much or so little of the truth, or such a version of it, as will suit his case.* * * * [Emphasis supplied.]

While this evidence was admissible in these administrative hearings, this is not to say that it constituted substantial evidence. We must now decide that question.

■ Although uncorroborated hearsay evidence is unreliable and must be considered with caution, it is possible under Federal law for it to have probative value. Diaz v. United States, *supra*; and Willapoint Oysters, Inc. v. Ewing, *supra*. In the last cited case, the court said:

The degrees of probative force and reliability of hearsay evidence are infinite in variation, and its use by administrative bodies, ex necessitate, must in part be governed by the relative unavailability of other and better evidence. * * * [174 F.2d at 691.]

■ Even though uncorroborated hearsay may have some probative value, it may lack sufficient probative force, standing alone, to constitute substantial

evidence that will support a decision of an administrative agency.

What, then, is substantial evidence? This is a constantly recurring problem that has troubled courts for a long time. A precise definition of substantial evidence is difficult to express in a way that will make it applicable to all situations in all cases. This is so, because there are so many factors that have to be considered, such as different statutes and regulations, "good" hearsay and "bad" hearsay (which are difficult to define), whether or not hearsay is objected to or corroborated, and, if corroborated, by what and how much, and whether hearsay is contradicted by direct, legal, and competent evidence and whether the agency has subpoena power. This list is by no means complete and could be much extended.

The Supreme Court defined substantial evidence affirmatively and negatively in the case of Consolidated Edison Co. of New York v. NLRB, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). The affirmative definition is:

* * * It [substantial evidence] means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. * * * [Id. at 229, 59 S.Ct. at 217.]

The negative definition (*i. e.*, what is not substantial evidence) is as follows:
* * * Mere uncorroborated hearsay or rumor does not constitute substantial evidence. [*Id.* at 230, 59 S.Ct. at 217.]

It may be that the two definitions are not inconsistent, but it is not always clear that this is so.

Many courts have followed and applied the affirmative definition, such as NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501,

83 L.Ed. 660 (1939); Morelli v. United States, 177 Ct.Cl. 848, 852 (1966); River Constr. Corp. v. United States, 159 Ct. Cl. 254, 261 (1962); Williams v. United States, 127 F.Supp. 617, 130 Ct.Cl. 435, 441 (1955), cert. denied, 349 U.S. 938, 75 S.Ct. 783, 99 L.Ed. 1266 and many others that could be cited.

In like manner, many cases and authorities follow the negative definition approach, as Hill v. Fleming, 169 F.Supp. 240 (W.D.Pa.1958); United States v. Krumsiek, 111 F.2d 74, 78 (1st Cir. 1940); Cohen v. Perales, 412 F.2d 44, rehearing denied, 416 F.2d 1250 (5 Cir. 1969); 32A C.J.S. Evidence § 1016 (1964); NLRB v. Amalgamated Meat Cutters, 202 F.2d 671, 673 (9 Cir. 1953), and others.

Some cases have applied both definitions in the same case, as Camero v. United States, 345 F.2d 798, 800, 170 Ct. Cl. 490, 493–494 (1965) and Willapoint Oysters, Inc. v. Ewing, *supra*. In the case last cited the court said:

 * * * However, since "substantial evidence" includes more than "uncorroborated hearsay" and "more than a mere scintilla," the findings, to be valid, cannot be based upon hearsay alone, nor upon hearsay corroborated by a mere scintilla. Founded upon these requirements, the test whether evidence is "substantial," is whether, in the individual case before the court, there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [174 F.2d at 691.]

Other cases follow the rule that uncorroborated hearsay cannot be substantial evidence if it is contradicted by direct legal and competent evidence at the hearing. Cohen v. Perales, *supra*; NLRB v. Ford Motor Co., 114 F.2d 905 (6th Cir. 1940). The court recognized this rule in American Rubber Prod. Corp. v. NLRB, 214 F.2d 47, 52 (7th Cir. 1954), but did not apply it in that case saying:

 * * * In the case at bar, however, no evidence was offered to contradict the hearsay evidence which was admitted without objection * * *.

This rule is stated in 30 Am.Jur.2d Evidence, § 1103, as follows:

 * * * [I]f it [hearsay evidence] is uncontradicted, [it] may constitute substantial evidence of the fact asserted, but if it is contradicted by other legal evidence it will not support a finding. [Citing American Rubber Prod. Corp. v. NLRB, *supra*; 79 A.L. R.2d 931, § 17; and General Service Garage v. Lexington Oil Co., 274 Ky. 330, 118 S.W.2d 690 (1938).]

Our court has not laid down a hard and fast rule applicable to all cases as to what constitutes substantial evidence. We have, instead, resolved the problem on a case by case basis. We have followed this procedure because of the difference in the facts, statutes, regulations, and circumstances in the various cases involving this problem. For instance, in Conn v. United States, 376 F.2d 878, 180 Ct.Cl. 120 (1967) we held that hearsay statements obtained by an investigator, and which were objected to by the plaintiff, were insufficient without other evidence to support a decision discharging the plaintiff. On the other hand, the majority of the court in Peters v. United States, 408 F.2d 719, 187 Ct.Cl. 63 (1969) held that *ex parte* hearsay statements of persons who had bribed the plaintiff in connection with his official duties, which constituted the sole evidence of the government and to which plaintiff objected, had sufficient probative force to support the removal of the plaintiff from his job by an administrative agency. Of course, the statutes, regulations, services, and circumstances in the two cases were different.

■ Turning now to the case before us, it is clear that the hearsay evidence of the government was not substantial evidence, regardless of the definition or test that is used. It was uncorroborated hearsay and was objected to by the plaintiff; it was contradicted by direct legal, and competent evidence at the hearing;

and it was not such relevant evidence as a reasonable mind might accept to support a conclusion.

Accordingly, we hold that, considering the record as a whole, the decisions sustaining the allegations in Charge II and discharging the plaintiff are not supported by substantial evidence and are invalid.

In view of the foregoing, we find it unnecessary to reach the other alleged procedural errors complained of by the plaintiff.

This only leaves Charge I relative to the late cashing of taxpayers' checks by plaintiff as stated in the two specifications of this Charge. It is our view that Charge I and Charge II are so intertwined and braided together, with Charge II being the principal complaint against plaintiff, that when Charge II is held to be invalid, Charge I must suffer the same fate. As a matter of fact, counsel for the government tacitly agreed at oral argument before us that the plaintiff would not have been discharged under Charge I had it not been for Charge II. In any event, we agree with plaintiff that his discharge on Charge I after 22 years of satisfactory government service was to harsh and out of all proportion to the offense charged. We have held that a dismissal under such circumstances is an abuse of discretion, is illegal, and demands redress by this court. See Clark v. United States, 162 Ct.Cl. 477, 484 (1963); Gadsden v. United States, 78 F.Supp. 126, 111 Ct.Cl. 487 (1948); 100 F.Supp. 455, 119 Ct.Cl. 86, cert. denied, 342 U.S. 856, 72 S.Ct. 83, 96 L.Ed. 645 (1951); Knotts v. United States, 121 F.Supp. 630, 128 Ct.Cl. 489 (1954); cf. Hoppe v. United States, 136 Ct.Cl. 559 (1956), cert. denied, 355 U.S. 816, 78 S.Ct. 19, 2 L.Ed.2d 33 (1957). This charge was minor in nature, was old, and plaintiff had already received a reprimand for it from his superior. His dismissal based on this charge was too harsh and an abuse of discretion by the agency under all of the circumstances and will not be allowed to stand.

It is concluded that plaintiff is entitled to recover, that his motion for summary judgment is granted, and that defendant's cross-motion for summary judgment is denied. Judgment is entered for plaintiff with the amount of recovery to be determined under Rule 131(c) (2).