This case is before the court on cross-motions for summary judgment. Based on the parties’ submissions, and without oral argument,[1] we allow defendant’s cross-motion and deny plaintiffs motion.
Plaintiff Gargas is a former GS-9 Food Program Specialist with the Food and Nutrition Service (FNS), Department of Agriculture. On November 1,1977, after 9 years with the Agriculture Department, Gargas was sent a letter warning that his job performance had become unsatisfactory. The letter specified the minimum requirements for satisfactory performance in his position and informed Gargas that if his performance did not substantially improve over a 90-day warning period his removal would be proposed. By letter of March 3, 1978, Gargas was informed that his performance during the warning period had failed to meet the minimum requirements identified in the November 1, 1977, letter. Based on five listed specifications involving 90 percent of Gargas’ work assignments during the period, the letter proposed removal. Gargas and his attorney gave various written and oral responses to the intended removal. Thereafter, the agency removed Gargas effective September 1, 1978. Gargas then made timely administrative appeal, alleging both substantive and procedural defects. After a *653 full hearing was held, the Chicago Regional Office of the Merit Systems Protection Board (MSPB)[2] sustained removal based on the five specifications. After the Appeals Board of the MSPB declined further discretionary review, Gargas filed an action in federal district court in Illinois. That action was transferred here under 28 U.S.C. § 1406(c) (1976), presumably because the back pay Gargas sought exceeded $10,000. See 28 U.S.C. § 1346(a)(2).
Only limited review, of course, is generally available of administrative action taken against federal employees. Specifically, a reviewing court determines whether there has been substantial compliance with procedural requirements and whether the action was arbitrary, capricious, or not supported by substantial evidence. Schlegel v. United States, 189 Ct. Cl. 30, 35-36, 416 F. 2d 1372, 1375 (1969), cert. denied, 397 U. S. 1039 (1970); Boyle v. United States, 207 Ct. Cl. 27, 34-35, 515 F. 2d 1397, 1401 (1975), and cases cited thereat. The presumption is that the agency has acted in good faith. E.g., Grover v. United States, 200 Ct. Cl. 337, 343 (1973); Home v. United States, 190 Ct. Cl. 145, 150, 419 F. 2d 416, 419 (1969). A plaintiff has the burden to show with specificity the deficiencies requiring reversal of the agency’s action. Gross v. United States, 205 Ct. Cl. 605, 613, 505 F. 2d 1271, 1275-1276 (1974); Poschl v. United States, 206 Ct. Cl. 672, 692 (1975). In this court, Gargas attacks both the substance and the procedure of the MSPB decision sustaining his removal.
Gargas’ major substantive contention is that the MSPB decision was unsupported by substantial evidence. Gargas concedes the events occurred as described in the five specifications supporting removal but argues that the MSPB drew an improper factual conclusion from the events. Gargas suggests instead that the specifications merely describe "differences in writing style” between Gargas and his supervisors. Thus, Gargas concludes, he was able to perform his job, although not in the precise manner of his supervisors. We disagree for an examination of each specification shows the errors went to the heart of the *654 correspondence Gargas was attempting to draft and demonstrate Gargas’ inability to satisfactorily perform his job.
In Specification 1, the error was that Gargas failed to inform the Minnesota and Indiana state agencies that their reports (FNS Form 86) were unacceptable because of the failure to complete items 9D (announcement that the program was open to all members of minority groups) and 9E (documentation of announcement). These were the basic reasons the reports were unacceptable. A letter returning them to the reporting state agency for completion would have been useless without referring to this information. Gargas’ drafts did not. Moreover, the unacceptable drafts were late. Gargas offered no explanation for the omissions.
In Specification 2, Gargas was assigned to draft a letter to the Ohio state agency asking why no FNS Forms 86 for periods after February 1977 had been received. His first draft was again tardy. It did not refer to non-receipt after February 1977 at all. Gargas’ redraft had to be rewritten by his supervisor. Gargas had no explanation for these errors either.
In Specification 3, Gargas was assigned to prepare a letter to the Michigan state agency inquiring as to non-completion of FNS Form 86 items 9D and 9E (as in Specification 1). The letter was to be drafted by December 9. His draft letter, submitted December 19, made no reference to these specific items. In a related assignment, Gargas determined that return of 55 separate state reports was necessary for a variety of omissions when, in fact, the vast majority were correct under applicable exemptions Gargas was required to apply.
Specification 4 dealt with a second attempt by Gargas to complete the work assigned in Specification 3. The second attempt also was tardy and unsatisfactory as to content. The Michigan letter was finally written by Gargas’ supervisor.
Specification 5 dealt with three letters. All were submitted well after the assigned deadline. One was a follow-up letter to an Indiana state agency. It should have requested that information sought in earlier correspondence be supplied, but Gargas’ draft did not. Another letter should have reported to the Washington FNS office that an *655 investigation of a certain store was in progress, but it did not. The third letter, written to request a payment previously sought by FNS, did not make correct reference to the earlier correspondence.
Plaintiff was well aware after the November 1, 1977, letter (if not before) that his job required him to carefully and correctly evaluate various state submissions and to indicate precisely in correspondence with those state agencies any defects in their submissions. Whether denominated as "differences in writing style” or not, Gargas repeatedly failed to achieve a timely and satisfactory work product expressing the precise concerns of his employers. These shortcomings go to the very essence of the communications and, unfortunately, to Gargas’ ability to perform his job in a satisfactory manner. We hold, therefore, that the MSPB decision sustaining Gargas’ removal was based on substantial evidence.
Gargas also argues that a variety of procedural errors in the removal and appeals process require that his dismissal be overturned. First, plaintiff argues that the notice of proposed removal did not adequately inform him of either the charges against him or the specific requirements of his job that he failed to fulfill. These contentions must be rejected. The letter proposing Gargas’ removal made specific reference to the November 1, 1977, letter which detailed the requirements of Gargas’ position. Further Gargas’ specific written and oral replies challenging the proposed removal as well as the complete defense Gargas offered throughout adequately refute a claim of prejudicial surprise. See, e.g., Schlegel v. United States, supra, 189 Ct. Cl. at 38, 416 F. 2d at 1376. Similarly, we reject Gargas’ contentions that the agency failed to inform him of his appeal rights. Gargas can hardly claim prejudice here, as an appeal, with full hearing, was held.
Second, Gargas argues that the removing agency, FNS, employed an incorrect standard of proof when deciding to remove him. The record suggests no such conclusion, and as we have discussed supra, we think simple evidence existed on which to remove Gargas.
Third, Gargas alleges that certain testimonial references at the hearings to documents not in evidence (such as *656 several of the underlying FNS Form 86 reports) constitute uncorroborated hearsay and reversal is therefore mandated under Jacobowitz v. United States, 191 Ct. Cl. 444, 424 F. 2d 555 (1970). Gargas’ argument is flawed for several reasons. The simple answer is that the evidence file did contain agency memoranda, evaluations, and the letters prepared by Gargas and redrafted by his superiors. Those, we think, provide adequate corroboration for the testimonial references to the underlying documents.[3]
Fourth, Gargas says the removal action was motivated by personal animosity rather than by objective employment criteria. We find nothing to suggest Gargas’ repeated failures to complete assigned tasks adequately were not the reason for his removal.
Fifth, Gargas argues that the MSPB hearing officer erred in allowing the FNS officials who proposed and decided to remove him to represent FNS. Gargas points to no authority requiring a separation of these functions, and we decline to create one, especially in light of the steps the hearing officer took to minimize prejudice.[4] In a related vein, we also reject Gargas’ contention that improper limits were placed on testimony at the hearing as to whether improper motives were behind this removal. The transcript discloses that the hearing officer allowed Gargas’ counsel wide latitude in this area.
Gargas’ further claims are equally without merit. Accordingly, as the MSPB decision was supported by substantial evidence and was not procedurally invalid, defendant must prevail.
it is therefore ordered that defendant’s cross-motion for summary judgment is hereby granted. Plaintiffs motion for summary judgment is hereby denied. Plaintiffs petition is hereby dismissed.

 The parties have waived oral argument under Rule 146(f).

 Gargas appealed September 14, 1977, to the Federal Employee Appeals Authority (FEAA). On January 1, 1979, the MSPB became the successor to the FEAA. Gargas’ hearing was held January 18, 1979.

 Similarly, we reject the claim that the failure to place these FNS Form 86 reports in evidence was reversible error.

 Gargas’ contention that the hearing officer improperly allowed these FNS officials to testify first is also without merit. See Dozier v. United States, 473 F. 2d 866, 868 (5th Cir. 1973). Indeed, the hearing officer reordered the testimony to prevent possible prejudice.