**Ruth L. WILLIAMS, Plaintiff,**

v.

**THE UNITED STATES, Defendant.**

**No. 00–452–C.**

United States Court of Federal Claims.

Aug. 8, 2001.

James A. Endicott, Jr., Harker Heights, TX, for plaintiff.

Timothy P. McIlmail, with whom were Stuart E. Schiffer, Acting Assistant Attorney

General, David M. Cohen, Director, James M. Kinsella, Deputy Director, Civil Division, United States Department of Justice, Washington, DC, for defendant. Lt. Col. Jill M. Grant and Maj. Joseph C. Fetterman, U.S. Army Legal Services Agency, Arlington, VA, of counsel.

## OPINION AND ORDER

HEWITT, Judge.

This is a suit for back pay and correction of military records to expunge references to the incident that led to plaintiff's discharge from the United States Army. Plaintiff contends that her discharge in 1994, and the refusal in 1998 by the Army Board for Correction of Military Records (ABCMR) to remove from her records all references to the cause of the discharge, were arbitrary and capricious. Defendant argues that the discharge and the denial of plaintiff's requests to correct her records were supported by the record and consistent with law. Defendant has moved for judgment on the administrative record under Rule 56.1 of the United States Court of Federal Claims (RCFC). For the following reasons, defendant's motion is GRANTED.

I. Legal Standards Applicable to This Proceeding

A. Judgment on the Administrative Record

Motions in this court for judgment on the administrative record are governed by the court's Rule 56.1, which incorporates the standards applicable to summary judgment motions under Rule 56. RCFC 56.1(a); *Bond v. United States*, 47 Fed.Cl. 641, 651 (2000). Under those standards, the court may grant judgment on the administrative record if "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." RCFC 56(c). Material facts are those that might significantly affect the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

B. Standard of Review

The court reviews administrative decisions of the armed forces under the "substantial evidence" standard. *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983). Under that standard, the court reviews the ABCMR's decision to determine whether it was "arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure." *Clayton v. United States*, 225 Ct.Cl. 593, 595, 1980 WL 13179 (1980). The court may not "substitute [its] judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig*, 719 F.2d at 1156. "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Jacobowitz v. United States*, 191 Ct.Cl. 444, 424 F.2d 555, 561 (1970) (quoting *Consolidated Edison Co. of New York v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

C. Correction of Military Records

The Secretary of the Army has the power to correct any Army military record when "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). Those decisions are made through civilian review boards of the executive part of the Army. *Id.*

II. Discussion

A. Procedural History

Plaintiff enlisted in the Army for a six-year term on October 26, 1988. Def.'s Statement of Facts in Support of Renewed Motion for Judgment Upon the Administrative Record (DSF) ¶ 1.[1] The Army issued plaintiff a general discharge under honorable conditions for misconduct on August 1, 1994. Administrative Record (AR) at 33; *see* DSF ¶ 19. This dispute is about the propriety of the Army's basing plaintiff's discharge on "misconduct."

In June of 1997, plaintiff applied to the Army Discharge Review Board (ADRB) for a

1. The statements taken from defendant's state-
ment of facts have not been disputed by plaintiff.

review of her discharge and a correction of her records, requesting that her discharge be upgraded to an honorable discharge, that the reason for her discharge be change from "misconduct" to "completed term of service or secretarial authority," and that she be restored to active duty with back pay and promotions. DSF ¶ 20; AR at 13, 23, 31. On February 18, 1998, the ADRB upgraded plaintiff's discharge to "Honorable" in light of plaintiff's "faithful and honorable service." DSF ¶ 21; AR at 20–21. The ADRB voted not to change "misconduct" as the reason for plaintiff's discharge. DSF ¶ 21; AR at 20–21. In a decision dated September 23, 1998, the ABCMR sustained the ADRB's decision (original ABCMR decision). DSF ¶¶ 22–25; AR at 9, 11–12. Plaintiff subsequently brought suit in this court under the Tucker Act, 28 U.S.C. § 1491, on July 31, 2000.

Defendant moved for judgment on the administrative record on October 23, 2000. Defendant's Motion for Judgment Upon the Administrative Record (Def. First Mot.). Plaintiff responded on November 27, 2000, arguing that there were disputed issues of fact that precluded judgment for defendant on the administrative record. Plaintiff's Response to Defendant's Motion for Judgment on the Administrative Record (Pl. First Opp.). At defendant's request, see Defendant's Motion for Suspension of Proceedings and Remand (Def. Remand Mot.), the court remanded the case to the ABCMR on January 3, 2001 for further consideration.[2] In its decision on remand, issued March 26, 2001 (ABCMR remand decision), the ABCMR

found that "the new information and new contentions submitted in [plaintiff's] request do not warrant a reversal of the Board's earlier decision." Supplemental Administrative Record (Supp.AR) at 225. Defendant renewed its motion for judgment on the administrative record in this court on June 11, 2001. Defendant's Renewed Motion for Judgment Upon the Administrative Record (Def. Second Mot.). Plaintiff filed her opposition on July 12, 2001, setting forth substantially the same arguments that she had advanced in her opposition to the first motion. Compare Plaintiff's Response to Defendant's Renewed Motion for Judgment Upon the Administrative Record (Pl. Second Opp.) at 7–9 with Pl. First Opp. at 5–7.

### B. Plaintiff's Challenge

The principal "misconduct" supporting plaintiff's separation was the charge that plaintiff had shot her husband. AR at 36–37. The ABCMR remand decision cited three main factors in support of its conclusion that plaintiff was responsible for the shooting: (1) ballistics reports indicating that plaintiff's husband could not have shot himself; (2) plaintiff's failure to cooperate with the investigation; and (3) an "indication" that plaintiff had previously committed a similar offense. Supp. AR at 232–33. Plaintiff argues that the evidence relied on by the ABCMR is either nonexistent or contradicted by other evidence, with the result that the conclusion of the ABCMR remand decision was arbitrary and capricious.[3] Pl. Second Opp. at 7–

---

**2.** The remand was at defendant's request. Defendant's Motion for Suspension of Proceedings and Remand (Def. Remand Mot.). Plaintiff argued in her response to defendant's motion for judgment on the administrative record that certain documents had been considered by the ABCMR but not included within the administrative record. Plaintiff's Response to Defendant's Motion for Judgment Upon the Administrative Record at 5. The court requested that defendant append those documents to its reply or explain their absence from the administrative record. Order of December 5, 2000. Defendant subsequently moved on December 27, 2000 for a remand of proceedings in this case to the ABCMR. Defendant stated, in support of its motion, that it had obtained one of the documents cited as missing from the administrative record and requested a remand "for further proceedings in which the ABCMR considers [the found document] as well

as any other relevant evidence Ms. Williams wishes to present in support of her application." Def. Remand Mot. at 2.

**3.** Plaintiff also raises a procedural point regarding the composition of the administrative record. On August 17, 1993, plaintiff received nonjudicial punishment for possession of an unregistered weapon. Plaintiff's Statement of Additional Facts in [Opposition to] Defendant's Renewed Motion for Judgment Upon the Administrative Record (PSF) ¶ 4. Plaintiff claims that her commander barred her from reenlistment on March 7, 1994 because of her possession of the unregistered weapon. Id. ¶ 5. Plaintiff points out that records of neither the punishment nor the bar to reenlistment are included in the administrative record. Pl. First Opp. at 3; Pl. Second Opp. at 3. Plaintiff does not, however, argue that she was

8. The court examines each of these factors.[4]

### 1. Ballistics Evidence

In March 1993, plaintiff's husband was shot in the thigh. DSF ¶ 4. He accused plaintiff of shooting him. *Id.* ¶ 5. The Army charged plaintiff with assault with intent to inflict bodily harm. *Id.* ¶ 10. Plaintiff claimed that her husband had shot himself. *Id.* ¶ 6. At a hearing held on June 16, 1993, Maj. Charles M. Ware, the surgeon who treated plaintiff's husband, testified that he had found no powder burns around the entry wound and that powder burns would have been expected if plaintiff's husband had been shot from a distance of less than eighteen inches. AR at 144–46. Maj. Ware also testified that, notwithstanding the indication (from the lack of powder burns) that the gun was discharged from no closer than eighteen inches, he "suppose[d] it[ ] possible" the wound could have been self-inflicted. *Id.* at 149. The investigating officer issued a report on June 18, 1993, recommending dismissal of the assault charge. DSF ¶ 12; AR at 67, 68. The investigating officer considered the possibility that plaintiff's husband had shot himself to be "as likely as not." AR at 69. The assault charge was dismissed in an undated memorandum. DSF ¶ 13; AR at 65.

On July 19, 1993, apparently after the court-martial proceeding was completed, a ballistics report was prepared showing that the gun used to shoot plaintiff's husband "stopped depositing visible gunshot residues at between 5–6 feet." [5] AR at 39, 42. That

---

prejudiced by the failure to include these materials in the administrative record. Neither the fact that plaintiff possessed an unregistered weapon nor her nonjudicial punishment nor her bar to reenlistment was cited as significant in either decision of the ABCMR. The court therefore finds that the failure to include those materials in the administrative record was not prejudicial to plaintiff.

4. The main grounds on which plaintiff objects to the ABCMR remand decision are discussed in the text. This footnote addresses a secondary issue which appears to the court to have been removed from the case by the ABCMR remand decision.

The original ABCMR decision found that the court-martial charge had been dropped "based in part on a tape recording of telephone conversations between the applicant and her husband after the shooting which the investigator felt indicated that the applicant did not shoot her husband." AR at 10. The original ABCMR decision also stated that "further criminal investigation information [after the dismissal of the court-martial charge] was provided to the applicant's commander that showed … that the tape recording between the applicant and her husband was edited in favor of the applicant." *Id.* at 11. Plaintiff stated, in her response to defendant's original motion for judgment on the administrative record, that the evidence regarding the alleged editing of the tape recording had not been provided to her. Pl. First Opp. at 4–5. The ABCMR remand decision stated that the ABCMR found "no stated rationale for th[e] conclusion" that the tape had been edited, but also found that there was sufficient evidence apart from the tape recording to support the conclusion that plaintiff had shot her husband and that "neither the presence nor absence of the tape and/or the transcript [of the conversations] was materially prejudicial to the applicant's original case before

th[e] Board." Supp. AR at 232–33. Plaintiff, in her response to defendant's renewed motion for judgment on the administrative record, does not take issue with this conclusion, but argues that the ABCMR on remand considered "evidence unknown to Plaintiff." Pl. Second Opp. at 7. Plaintiff provides no specifics in support of her allegation. Conclusory allegations or statements by themselves are not sufficient to defeat a motion for summary judgment. *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1112 (Fed.Cir.2000).

The court notes in addition that the ABCMR was aware that the tape recording had not originally been provided to plaintiff and therefore did not cite the tape recording, or any conclusions about the tape recording, as support for its decision on remand. *See* Supp. AR at 232–33 ("Neither the tape recording [plaintiff] made of telephone conversations nor the transcript thereof was in [plaintiff's] records nor available for the original Board consideration…. The evidence supporting the basic conclusion that [plaintiff] shot her husband includes, that she had been less than forthcoming during the investigation, the physical evidence … and the indication that she had previously committed a similar offense."). Any possible prejudice to plaintiff as a result of the original ABCMR decision's reliance on the tape recording was therefore not repeated in the ABCMR remand decision.

5. The original ABCMR decision equated "powder burns" with "gunshot residues" in discussing the ballistics report and the court-martial hearing. *Compare* AR at 157 (ballistics report, noting that the gun left "gunshot residues" when discharged within five to six feet of its target) *with id.* at 145 (testimony of Maj. Ware, referring to absence of "powder burns" on plaintiff's husband's skin); *see* AR at 11 (stating that ballistics report showed that the gun "left powder burns

ballistics evidence was included in a Criminal Investigation Report dated November 12, 1993. Supp. AR at 236, 246. The investigative summary in the Criminal Investigation Report stated, "Investigation established probable cause that [plaintiff] committed the offense of aggravated assault when she shot her husband." *Id.* at 236. On May 17, 1994, plaintiff's commanding officer initiated action to separate plaintiff from the Army for commission of a serious offense. AR at 54–55. Plaintiff was discharged on August 1, 1994 for misconduct. DSF ¶ 19.

Both the original ABCMR decision and the ABCMR remand decision cited the ballistics report issued on July 19, 1993 as evidence supporting the discharge for misconduct. AR at 11; Supp. AR at 232. The original ABCMR decision found that the evidence of the ballistics report, specifically the finding that the gun was at least five to six feet away when plaintiff's husband was shot (since he did not suffer powder burns), precluded the possibility that plaintiff's husband had shot himself. AR at 11. The board noted that the court-martial charge for the same offense was dismissed but found that the ballistics report was not available to plaintiff's commander until after the court-martial proceedings were completed. *Id.* at 10–11. In that light, the board found "no error or injustice" in discharging plaintiff "in light of additional information." *Id.* at 12. The ABCMR remand decision found that "[t]he evidence supporting the basic conclusion that the applicant shot her husband includes ... the physical evidence (no residue on the gloves and no deposits on his skin) that the husband could not have shot himself." Supp. AR at 232.

The court finds that the ballistics report constitutes "substantial evidence," *see Heisig,* 719 F.2d at 1156, to support the conclusion reached in the ABCMR remand decision. In light of the initial evidence, *see* AR at 71, the investigating officer found that "[a]n individual could hold the gun and shoot oneself from 18 inches fairly easily," and explained that the evidence indicated that the

likelihood of plaintiff's guilt was "exactly the same" as the likelihood that plaintiff's husband shot himself. *Id.* It therefore appears that the decision to drop the court-martial charge against plaintiff depended in significant part on the initial evidence, which was contradicted by the later ballistics report. *Id.* at 157. The accuracy of the later ballistics report has not been disputed.

Notwithstanding the undisputed ballistics evidence, plaintiff argues that the ABCMR remand decision was arbitrary and capricious because it failed to discuss certain statements made at the June 16, 1993 court-martial hearing. Pl. Second Opp. at 7–8. Specifically, plaintiff points to the testimony of Maj. Charles M. Ware, the physician who treated plaintiff's husband after the shooting. AR at 143–44. Maj. Ware testified as follows:

> [W]e found no evidence of powder burns to say that it would have been an extremely short distance, so it probably wasn't within one or two feet.
>
> . . . .
>
> If he was in an upright position, I don't feel [it] was possible [that the wound was self-inflicted]. If he was in a bent up position and had fashioned something far away from him, then I suppose it's possible.
>
> . . . .
>
> ... I've always said that I have never felt that anything was showing me any evidence of blast entry, meaning it was extremely close. Technically, could something be self-inflicted? You know, there are ways to do it without having it within a foot or 18 inches probably.
>
> [Defense counsel]. If somebody knew what they were doing with a weapon, do you think they could have self-inflicted it such that there would be not a total absence of evidence of self-infliction—there might be a minimal amount of evidence of self-infliction if somebody knew what they were doing with the weapon?
>
> [Maj. Ware]. There are conceivable possible ways to probably do that.

up to 6 feet from the muzzle" and that "it had earlier been established that [plaintiff's] husband's leg wound did not show any powder

burns"). There is no dispute about the use of the different terms to describe what appears to be the same phenomenon.

AR at 145, 148–49. Plaintiff argues that Maj. Ware's testimony was "contrary to [the ABCMR's] conclusion." Pl. Second Opp. at 7–8.

The court believes that plaintiff misreads the testimony. Maj. Ware merely established a hypothetical possibility. He did not state that he believed that the wound was self-inflicted. That Maj. Ware could hypothesize an alternative theory of events based on speculation does not demonstrate that the ABCMR's decision was not supported by substantial evidence. This court has refused to find that unrefuted speculative testimony that was inconsistent with a military board's decision demonstrated the absence of substantial evidence to support that decision. *See Kellus v. United States,* 13 Cl.Ct. 538, 545 (1987). Here, not only was Maj. Ware's testimony speculative, but the premise of that testimony (that the gun could have been discharged from as close as eighteen inches) was refuted by later evidence. Maj. Ware's testimony therefore does not render the ABCMR remand decision unsupported by substantial evidence. In these circumstances, the ABCMR remand decision was not, as plaintiff argues, rendered arbitrary by the ABCMR's failure to credit or discuss speculative testimony based on an erroneous premise. *See* Pl. Second Opp. at 7, 9.

Plaintiff also argues that the ABCMR remand decision erred in finding that plaintiff's commander had obtained new evidence after the conclusion of court-martial proceedings. Pl. Second Opp. at 6. Plaintiff's argument is contradicted by the record. The original ABCMR decision found that "[i]n early 1994, further criminal investigation information was provided to the applicant's commander that showed from a ballistics report on the hand gun involved that it left powder burns up to 6 feet from the muzzle." AR at 11. The record shows that the investigation in connection with the court-martial proceeding concluded on June 18, 1993. *Id.* at 67. The officer in charge recommended to the commander on the same date that the assault charge be dismissed. *Id.* at 66. The memorandum dismissing the charge was undated. *Id.* at 65. Because the ballistics report was not issued until July 15, 1993 and was not received by investigators until August 2, 1993, *see id.* at 157, Supp. AR at 246, its findings could not have been considered by the investigating officer or by the officer in charge. One could speculate, of course, since the commander's memorandum dismissing the charge was undated, that the memorandum reflected an independent investigation that considered the ballistics report, which appeared approximately one month after the original investigation concluded. Nothing in the record supports that speculation, however, and the court is not required to give it any weight in determining whether there was substantial evidence to support the ABCMR's conclusion. *See Wells v. United States,* 46 Fed.Cl. 178, 186 (2000) ("Much more than mere speculation is required [for a finding that a military board's decision was not supported by substantial evidence]."); *Kellus,* 13 Cl.Ct. at 545.[6]

---

**6.** Plaintiff also argues that "[t]he Army certainly could have reinstituted criminal charges against Plaintiff [upon acquiring new evidence tending to incriminate her] in that criminal justice jeopardy had not attached to the earlier 1993 proceedings and the statute of limitations for prosecution of aggravated assault had not expired." Pl. Second Opp. at 6. Plaintiff is correct that jeopardy had not attached with respect to the earlier court-martial proceeding. The charge against plaintiff was dismissed after an Article 32 hearing, not a trial. DSF ¶¶ 11–12. Hearings pursuant to Article 32 are conducted before a trial is held. 10 U.S.C. § 832(a), (b) (2001) ("No charge or specification may be referred to a general court-martial for trial until a thorough and impartial investigation of all the matters set forth therein has been made.... At that investigation full opportunity shall be given to the accused to cross-examine witnesses against him if they are available and to present anything he may desire in his own behalf, either in defense or mitigation, and the investigating officer shall examine available witnesses requested by the accused."). The former-jeopardy provisions of the Uniform Code of Military Justice are identical to the constitutional protections against double jeopardy. *United States v. Rosendahl,* 53 M.J. 344, 347 (C.A.A.F. 2000). Under the Constitution, jeopardy does not attach before trial. *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975) ("In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn.... In a nonjury trial, jeopardy attaches when the court begins to hear evidence."). The court does not believe, however, that it is relevant that the Army could have reinitiated court-martial proceedings against plaintiff. The Army is entitled to pursue court-martial proceedings or

### 2. Plaintiff's Cooperation with the Investigation

Plaintiff also objects, *see* Pl. Second Opp. at 7, to the finding in the ABCMR remand decision that plaintiff "had been less than forthcoming during the investigation." Supp. AR at 232. Plaintiff points out that "[t]he ABCMR provides no further analysis of this conclusion." Pl. Second Opp. at 7. The decision did note the conclusion of the Criminal Investigation Report of November 12, 1993 that plaintiff "had made contradictory reports by stating that [her] husband and shot himself in both the living room and the bedroom." Supp. AR at 230. The report also noted that plaintiff had terminated an interview with a military police investigator on the ground that she "didn't feel that anyone believed her." *Id.* at 238. The report also found that "throughout the course of this investigation [plaintiff] was not consistent in any of her statements and changed the version of her story on several occasions," and that plaintiff "refused to call the Military Police the night of the shooting." *Id.* at 249. Notwithstanding the lack of specific references in the ABCMR remand decision to plaintiff's unwillingness to cooperate with the investigation, the court finds that there was substantial evidence in the record to support that conclusion.[7]

### 3. 1988 Incident

Plaintiff also objects, *see* Pl. Second Opp. at 8, to the conclusion in the ABCMR remand decision that there was an "indication

that [plaintiff] had previously committed a similar offense," specifically, aggravated assault against her former husband Supp. AR at 232–33. The Criminal Investigation Report of November 12, 1993 stated as follows:

> A review of the local law enforcement files and the files of the U.S. Army Crime Records Center, Baltimore, MD 21222 revealed that on 9 Mar 88, at Fort Hood, TX, SGT R. WILLIAMS committed the offense of Assault With a Dangerous Weapon (handgun) With the Intent to Commit Bodily Harm. The disposition of action taken against SGT. R. WILLIAMS for that incident was not indicated. However, her husband at the time was exonerated as he was deemed to be acting in self-defense after SGT R. WILLIAMS assaulted him with the pistol.

Supp. AR at 249. Plaintiff points out that no charges were filed in connection with the 1988 incident due to insufficient evidence. Pl. Second Opp. at 8.

The record indicates that plaintiff was processed and released, in connection with the 1988 incident, upon an allegation of assault with a dangerous weapon with intent to commit bodily harm. Supp. AR at 317. Plaintiff's enlistment documents state that she was not charged in connection with the 1988 incident. AR at 222. The record also reflects that plaintiff's husband was charged with aggravated assault, but that no action was taken because plaintiff's husband was

nonjudicial punishment at its discretion. *See Cappella v. United States*, 224 Ct.Cl. 162, 624 F.2d 976, 978 (1980) ("[T]he commanding officer has broad discretion to determine whether a particular alleged offense is sufficiently serious to warrant court-martial rather than nonjudicial punishment under Article 15."). Whether the Army should have reinitiated court-martial proceedings was not before the ABCMR and is not before the court.

7. Plaintiff argues that the ABCMR considered "evidence of conduct that proper authority had dismissed under the Uniform Code of Military Justice," presumably referring to the 1993 incident, and that such consideration was improper. Pl. Second Opp. at 7. The court finds nothing improper in the board's reconsideration of the 1993 shooting upon new evidence regarding the circumstances of that shooting.

Plaintiff also argues that the evidence produced by a "later criminal investigation in early 1994" was considered by the ABCMR but not provided to plaintiff. Pl. Second Opp. at 4. Plaintiff appears to refer to the Criminal Investigation Report dated November 12, 1993, which, the original ABCMR decision states, was provided to plaintiff's commander in early 1994. AR at 11; *see* Pl. Second Opp. at 4–5. The court notes that the ballistics report on which the Criminal Investigation Report relied was included in the original administrative record. *See* AR at 157. Moreover, the Criminal Investigation Report was included in the supplemental administrative record that was before the parties and the board on remand. *See* Supp. AR at 236–52. The court finds that plaintiff had the conclusions of the further criminal investigation before her in the proceedings before the ABCMR on remand.

deemed to be "defending himself" against plaintiff. Supp. AR at 316.

The court notes that the ABCMR remand decision referred to an "indication" that plaintiff had previously committed a similar offense, and drew on the conclusion of the Criminal Investigation Report of November 12, 1993 that plaintiff had committed the 1988 offense. The basis for that conclusion is not clear to the court. The court is not, however, reviewing the findings of the Criminal Investigation Report in this case. Even if the ABCMR's reliance on the Criminal Investigation Report for that finding was unjustified, there was nevertheless still "substantial evidence" in the record, *see Jacobowitz,* 424 F.2d at 561, to support the conclusion that plaintiff shot her husband in 1993. *See* Supp. AR at 232–33. Even assuming that the ABCMR erred in considering the 1988 incident, the court believes that the error was harmless. *See Selman v. United States,* 723 F.2d 877, 881 (Fed.Cir.1983) (stating that error did not warrant reversal when Secretary of the Navy "had sufficient evidence before him to have reached the conclusion he did reach"). Plaintiff also argues with respect to the 1988 incident that "the ABCMR considered evidence of conduct prior to Plaintiff's enlistment" in reaching its decision, and that such consideration was improper. Pl. Second Opp. at 7. Plaintiff has cited no authority that could bar the consideration of such conduct.

III. Conclusion

The Federal Circuit has stated that "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province." *Heisig,* 719 F.2d at 1156. When there is substantial evidence to support the board's finding, the court must uphold that finding, notwithstanding the existence of contrary evidence. *Heisig,* 719 F.2d at 1157. There is substantial evidence in this case to support the ABCMR remand decision. Specifically, the ABCMR remand decision is supported by the ballistics report showing that the gun was discharged from no closer than five feet and the Criminal Investigation Report drawing on that evidence. *See* Supp. AR at 232–33. The significance of the ballistics report and the Criminal Investigation Report has not been disputed by plaintiff.

For the foregoing reasons, the court GRANTS Defendant's Renewed Motion for Judgment Upon the Administrative Record. The Clerk of the Court shall enter judgment for defendant. Each party shall bear its own costs.

IT IS SO ORDERED.